UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENJAMIN WEISS,<br><br>        Plaintiff,<br><br>                    v.<br><br>BINSTAR, INC., JACKSON LAUGHLIN,<br>AND AUBRIE PAGANO,<br><br>        Defendants. | Civil Action No.: |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiff Benjamin Weiss brings this action against Defendants Binstar, Inc., Jackson Laughlin and Aubrie Pagano because they refused to pay him his wages for eighteen months, and as to Pagano and Laughlin because they trashed his reputation.

More specifically, when Mr. Laughlin and Weiss founded Binstar, Inc., the Company had very little capital, so they made a simple arrangement. Both would earn $150,000 salary, and as soon as the Company raised capital, Mr. Weiss would be caught up. It worked, and for those first eighteen months, Jackson Laughlin was paid in full, but when the money came in, Mr. Laughlin and his new partner Aubrey Pagano welched on the deal. When Mr. Weiss finally demanded his wages, he was terminated in retaliation. Then, Aubrie Pagano, the New York City based venture capital investor and Board member of Binstar, Inc., decided to double-down and she and Mr. Laughlin sought to ruin Mr. Weiss's reputation. Ms. Pagano and Mr. Laughlin falsely spread a knowing lie – that Mr. Weiss was terminated for "misrepresenting his professional background." Nothing could be further than the truth. Yet, given Pagano and

Laughlin's careless conduct, Mr. Weiss finds himself having to defend against this lie in his business community.

Mr. Weiss brings this action to recover for the damages caused to him.

## THE PARTIES

1.      Plaintiff Benjamin Weiss ("Mr. Weiss") served as Head of Supply for Binstar, Inc.  Mr. Weiss is a California resident.

2.      Defendant Binstar, Inc. ("Binstar" and the "Company") is a Delaware-based corporation which conducted its business in the Commonwealth of Massachusetts, operating three retail stores within Massachusetts.

3.      Defendant Jackson Laughlin ("Mr. Laughlin") was the Chief Executive Officer of Binstar, and also served as its President, Treasurer and Director.  Mr. Laughlin is a resident of Massachusetts.  Mr. Laughlin was also at all relevant times Mr. Weiss' direct supervisor, and controlled, directed, and participated to a substantial degree in formulating and determining the operational and financial policy of Defendant Binstar.

4.      Defendant Aubrie Pagano ("Ms. Pagano") is a venture capitalist whose company, Alpaca VC, was an investor in Binstar, and she served on its Board of Directors.  Ms. Pagano is a resident of New York.  Upon information and belief, Ms. Pagano at all relevant times controlled, directed, and participated to a substantial degree in formulating and determining the operational and financial policy of Defendant Binstar.

## JURISDICTION AND VENUE

5.      The Court has diversity jurisdiction under 28 U.S.C. § 1332.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the asserted claims occurred herein.

7.      The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

8.      Mr. Weiss has satisfied all prerequisites and conditions precedent necessary to seek remedy against Defendants by this action.

## STATEMENT OF FACTS

9.      In 2022, Mr. Weiss is an entrepreneur who, with Defendant Jackson Laughlin, co-founded Binstar, Inc.

10.     BinStar was a Massachusetts-based ultra-discount retailer.  Bin stores sell highly discounted consumer goods (returned e-commerce goods, overstock and other excess inventory) with a daily improving price model.  There are hundreds of bin stores nationwide, but few in the northeast region.  As co-founder, Mr. Weiss was involved in every element of the business, including designing the Company's corporate and brand strategy, raising capital, negotiating with suppliers and recruiting employees, board members and advisors.

11.     Mr. Weiss began working as Co-Founder and Head of Supply for Binstar in April 2022, and he was successful.  When Mr. Weiss took over sole responsibility for purchasing, his acumen led to an increase in Gross Margins from the mid-teens to over 55%.  Additionally, Mr. Weiss's investor network produced two term sheets for the business including an offer of approximately $4 Million of bridge financing in May 2024.  Mr Weiss's contributions to the business were acknowledged by Mr. Laughlin and the rest of the Board of Directors through awarding Mr. Weiss a sizable founder's equity grant and an additional equity option top-up grant after the November 2023 funding round.

12.     When Mr. Weiss and Mr. Laughlin began the company, they agreed to each receive a base salary of $150,000 per year.  As the Company could not afford the salaries at that

time, Mr. Weiss relied on Mr. Laughlin's promise that he would be paid in full and caught up to Mr. Laughlin as soon as the Company could afford to do so. This would include the accrued amounts, and the promise induced Mr. Weiss to continue his efforts. Mr. Laughlin had no intention to make good on that promise.

13.  Mr. Laughlin began taking his $150,000 salary on or about Spring/Summer of 2022.

14.  Finally, at the time of the November 2023 funding round, Mr. Weiss began receiving his salary of $150,000. But Mr. Laughlin and Defendant Aubrie Pagano both refused to pay Mr. Weiss his accrued salary and refused his request for a formal employment agreement.

15.  Mr. Weiss had worked without pay for a period of approximately eighteen (18) months, and the retroactive salary payment was never made.

16.  In late May 2023, Binstar was facing a cash crunch due to Mr. Laughlin's profligate spending of company funds. Mr. Laughlin approached Mr. Weiss minutes before a Boad of Directors meeting and told Mr. Weiss that Mr. Weiss needed to cut his wages to zero as part of a plan to "show contrition" to the rest of the Board for Mr. Laughlin's over-spending. In subsequent conversations with Mr. Laughlin, Mr. Weiss resisted, noting specifically that he'd worked for free 18 months prior to receiving venture funding and it was unfair to make him the scapegoat for Mr. Laughlin's poor financial decisions. Mr. Weiss' wages were cut to zero for a period of days until Mr. Weiss told Mr. Laughlin that he would complain to the rest of the Board of Directors if Mr. Laughlin did not return Mr. Weiss' wages to his original salary.

17.  After an approximately eighteen-month period of non-payment, Binstar began paying Mr. Weiss salary at the previously agreed upon annual rate of $150,000.

18.  Binstar did not make any payments towards the amounts due.

4

19.    Mr. Weiss repeated his request for retroactive payment.

20.    Mr. Weiss' employment was terminated on July 17, 2024.

21.    In response to Mr. Weiss' complaint about the non-payment of his wages, upon information and belief one or both of Ms. Pagano and Mr. Laughlin contacted members of the financial community told them that Mr. Weiss was fired for "misrepresenting his professional background" – a knowingly false statement made to harm Mr. Weiss' reputation.

22.    Upon information and belief, the decisions to refuse payment of Mr. Weiss' wages for the eighteen (18) month period in question was made by Defendants Laughlin and Pagano.

23.    At all times during his employment, Mr. Weiss was under the control and direction of Mr. Laughlin and Ms. Pagano with the performance of his services for Binstar.

24.    Upon information and belief, Defendants Laughlin and Pagano both controlled, directed, and participated to a substantial degree in formulating and determining the operational and financial policy of Binstar.

25.    Defendants had the benefit of Mr. Weiss' employment, work product and reputation.

26.    Mr. Weiss was a full-time employee of Binstar, and all of the services that Mr. Weiss performed for Binstar were within the usual course of business of the company.

27.    The Defendants' improper actions noted above and refusal to pay all amounts due to Mr. Weiss have had a detrimental and damaging impact him, including but not limited to the following: (i) retaliating against Mr. Weiss for her complaints of non-payment of wages, (ii) tarnishing his reputation, and (iii) causing him emotional distress, and other costs and expenses.

**CLAIMS FOR RELIEF**

<u>**Count I**</u>
**Massachusetts Wage Act – Unpaid Wages**
**(Defendants Binstar, Pagano and Laughlin)**

28.     Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

29.     Defendants Binstar and Laughlin failed and/or refused to pay Mr. Weiss his full wages, in violation of the Massachusetts Wage Act.

30.     Defendant Laughlin was the Chief Executive Officer of Binstar, and also served as its President, Treasurer and Director of Binstar, and thus has individual liability for damages under the Wage Act.

31.     Defendant Pagano controlled, directed, and participated to a substantial degree in formulating and determining the operational and financial policy of Defendant Binstar, and thus, as an agent having management of the corporations, she has individual liability for damages under the Wage Act.

32.     As a result, Mr. Weiss has incurred damages in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

<u>**Count II**</u>
**Massachusetts Wage Act Retaliation**
**(Defendants Laughlin and Pagano)**

33.      Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

34.     Mr. Weiss complained about the non-payment of his wages.

35.     Defendants Laughlin and Pagano retaliated against Mr. Weiss for his protected conduct.

36.     In response, among other things, Defendants Laughlin and Pagano falsely notified

investment community members that he was terminated for misrepresenting his professional background, harming his reputation.

37.      In addition to the monetary damages, Mr. Weiss also suffered emotional distress and loss of business opportunities as a result.

38.      As a result, Mr. Weiss has incurred harm and loss in an amount to be determined at trial, along with multiple damages, attorneys' fees and costs of litigation.

## Count III
### Defamation of Character
### (Defendants Laughlin and Pagano)

39.      Plaintiff repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

40.      Defendants Laughlin and Pagano falsely notified investment community members that he was terminated for "misrepresenting his professional background," or words to that effect.

41.      This statement was knowingly false or made with reckless disregard to its falsity, and was published to third parties by Defendants Laughlin and Pagano.

42.      Defendants Lauhglin and Pagano intended to harm Mr. Weiss by their actions.

43.      In addition to monetary damages, Mr. Weiss also suffered emotional distress and loss of business opportunities as a result.

44.      As a result, Plaintiff has incurred harm and loss in an amount to be determined at trial.

## Count IV
### Breach of Contract
### (Binstar)

45.      Mr. Weiss repeats and incorporates herein the above paragraphs as if each were

set out in its entirety.

46.     Defendants Binstar and Laughlin failed and/or refused to pay Mr. Weiss his wages.

47.     As a result of the Defendants' breach of the agreement set forth above, Mr. Weiss has incurred damages in an amount to be determined at trial.

**Count V**
**Quantum Meruit/Unjust Enrichment**
**(Binstar)**

48.     Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

49.     Mr. Weiss conferred a measurable benefit upon Binstar.

50.     Binstar accepted services and expenses from Mr. Weiss for which a reasonable person would have expected to receive their guaranteed compensation and role.

51.     Mr. Weiss provided his services with the reasonable expectation of receiving his guaranteed compensation.

52.     In accepting these services without compensating Mr. Weiss, Binstar was unjustly enriched.

53.     Mr. Weiss has incurred damages in an amount to be determined at trial.

**Count VI**
**Fraud in the Inducement**
**(Laughlin)**

54.     Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

55.     As set forth above, to induce Mr. Weiss to continue working for Binstar, Defendant Laughlin made a false promise with regard to paying his compensation.  He did so in

8

his capacity as Chief Executive Officer.

56.    Mr. Laughlin had no intention of paying Mr. Weiss.

57.    Mr. Laughlin's misrepresentation was intentional and knowing.

58.    As a result of Mr. Weiss' reliance on those misrepresentations, Mr. Weiss has incurred damages in an amount to be determined at trial.

## Count VII
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Binstar)

59.    Mr. Weiss repeats and incorporates herein the above paragraphs as if each were set out in its entirety.

60.    Binstar had an obligation to act in good faith in the performance of its contractual duties to Mr. Weiss.

61.    Binstar and Laughlin failed to act with good faith and fair dealing in the performance of its duties to Mr. Weiss.

62.    As a result, Mr. Weiss has incurred damages in an amount to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that, and moves this Court to:

(A)    Determine the damages sustained by Plaintiff as the result of Defendants' unlawful non-payment of wages and retaliation in violation of the Wage Act, and award those damages, trebled, against Defendants and in favor of Plaintiff, together with such prejudgment interest as may be allowed by law;

(B)     Award Plaintiff his costs and disbursements in this suit, including, without

limitation, reasonable attorneys' fees and costs;

(C)     Determine the damages sustained by Plaintiff as the result of Defendants' breach

of contract and his other claims and award those damages against Defendants and

in favor of Plaintiff, together with such prejudgment interest as may be allowed

by law;

(D)     Enter a permanent injunction ordering Defendants henceforth to refrain from

engaging in the unlawful conduct described in this Complaint and to take all

necessary measures to ensure that it is at all times in compliance with such

injunction; and,

(E)     Grant Plaintiff such other and further relief as the Court may deem just and

proper.

Respectfully submitted,

BENJAMIN WEISS,
By his counsel,

/s/ Benjamin Flam

_____
Philip J. Gordon (BBO# 630989)
Benjamin Flam (BBO# 671853)
GORDON LAW GROUP, LLP
585 Boylston Street
Boston, MA 02116
Phone: (617) 536-1800
Fax: (617) 536-1802
pgordon@gordonllp.com
Dated:  February 18, 2025          bflam@gordonllp.com