UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BENJAMIN WEISS,

Plaintiff,

v.

BINSTAR, INC., JACKSON LAUGHLIN,
AND AUBRIE PAGANO,

Defendants.

No. 1:25-cv-10407-PBS

**MEMORANDUM IN SUPPORT OF DEFENDANT JACKSON LAUGHLIN'S MOTION
TO DISMISS THE COMPLAINT BASED ON MANDATORY ARBITRATION
AGREEMENT AND EXCLUSIVE FORUM SELECTION CLAUSE**

Defendant Jackson Laughlin ("Mr. Laughlin") submits this Memorandum in support of

his Motion to Dismiss the Complaint based on a mandatory arbitration agreement and an

exclusive forum selection clause. As set forth below, all of the claims asserted in the Complaint

arise from the Plaintiff's employment with Defendant Binstar, Inc. ("Binstar"), which is

governed by a written employment agreement containing a mandatory arbitration provision and a

forum selection clause mandating venue in the state and federal courts located in Travis County,

Texas. The Complaint should be dismissed

I.    BACKGROUND

**A.  Factual Allegations Set Forth in Plaintiff's Complaint.**

In 2022, Mr. Laughlin, a Massachusetts resident, and Mr. Weiss, a California resident,

co-founded Binstar, a Massachusetts-based ultra-discount retailer. See Complaint at ¶ 9-10.[1] Mr.

_____

[1] The Complaint contains numerous inaccuracies and incorrect allegations. Mr. Laughlin denies
any harm to Mr. Weiss, denies any liability, disputes damages, denies any defamation, and

Laughlin formerly served as Binstar's Chief Executive Officer, President, Treasurer and Director. See id. at ¶ 3. Mr. Weiss served as the Head of Supply for Binstar. See id. at ¶ 1. Mr. Weiss alleges that when he and Mr. Laughlin founded Binstar in April 2022, they each agreed to receive a base salary of $150,000 per year. See id. at ¶ 11-12. Mr. Weiss alleges that although the Company could not afford the salaries at the time, Mr. Laughlin promised Mr. Weiss that he would be paid in full as soon as the Company could afford to do so. See id. at ¶ 12. Mr. Weiss alleges that he worked without pay for a period of eighteen (18) months. See id. at ¶ 15. Mr. Weiss alleges that he began receiving his salary in November 2023, but that Mr. Laughlin and Defendant Aubrie Pagano ("Ms. Pagano") refused to pay Mr. Weiss his accrued salary and refused his request for a formal employment agreement. See id. at ¶ 14. Ms. Pagano is a venture capitalist whose company, Alpaca VC, was an investor in Binstar, and she served, or presumably continues to serve, on Binstar's Board of Directors. See id. at ¶ 4. Mr. Weiss alleges that he made repeated requests for retroactive payment. See id. at ¶ 18-19. Mr. Weiss' employment was terminated on July 17, 2024. See id. at ¶ 20. Mr. Weiss further alleges that in response to his complaint about the non-payment of wages, Mr. Laughlin and Ms. Pagano contacted members of the financial community and told them that the company terminated Mr. Weiss' employment for "misrepresenting his professional background" in order to harm Mr. Weiss' reputation. See id. at ¶ 21.

---

disputes any violation of the Massachusetts Wage Act and the applicability of the Massachusetts Wage Act (Counts I and II) to this case. Mr. Laughlin does not waive and expressly reserves the right to dispute all allegations in the Complaint and assert defenses in the proper forum.

### B.  Plaintiff's Employment Agreement.

On October 2, 2023, Mr. Weiss executed a contract entitled "Binstar, Inc. Employee Proprietary Information Agreement" (the "Employment Agreement"). A true and accurate copy of the Employment Agreement is attached hereto as Exhibit A.

### 1.  The Employment Agreement Contains a Valid Integration Clause

The Employment Agreement is the sole agreement governing the terms of the Plaintiff's employment, and it supersedes all contemporaneous and prior discussions, agreements or representations concerning the terms of the Plaintiff's employment. The integration clause states, in pertinent part:

(b) Entire Agreement.   This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all contemporaneous and prior discussions, agreements or representations between us, including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral, and any previously executed proprietary information agreements.
Employment Agreement, para. 12(b).

### 2.  The Employment Agreement Contains a Mandatory Arbitration Provision

Pursuant to paragraph 10 of the Employment Agreement (the "Arbitration Agreement" or "Paragraph 10"), the Parties agreed to resolve all employment-related claims through final and binding arbitration. The Arbitration Agreement provides:

10. *Arbitration and Equitable Relief.*

(a) *Arbitration*. Except as provided in subsection (b) below, I agree that any dispute, claim or controversy concerning my employment or the termination of my employment or any dispute, claim or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Austin, Texas in accordance with the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. To the extent permitted by law, the Company shall pay the

3

administrative fees associated with the arbitration, except for the first $300.00 in administrative fees for any arbitration that is initiated by [Mr. Weiss], and each of us shall separately pay our counsel fees and expenses.

(b) *Equitable Remedies*. I agree that it would be impossible or inadequate to measure and calculate the Company's damages from my breach of Sections 2, 3, 4, 5, and 6 of this Agreement. Accordingly, I agree that if I breach any such Section, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. I further agree that no bond or other security shall be required in obtaining such equitable relief and I hereby consent to the issuance of such injunction and to the ordering of specific performance.

Employment Agreement, para. 10.

### 3.   The Employment Agreement Contains an Exclusive Forum Selection Clause

Section 12 of the Employment Agreement also provides that, subject to the Arbitration Agreement, the state and federal courts located in Travis County, Texas, shall be the venue for any dispute between Mr. Weiss and Binstar. Section 12 of the Employment Agreement provides:

12. *General Provisions*.

(a) *Governing Law; Consent to Personal Jurisdiction*. THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. SUBJECT TO THE ARBITRATION PROVISION IN SECTION 10(a), THE COMPANY AND I AGREE THAT THE EXCLUSIVE VENUE FOR RESOLVING ANY DISPUTE BETWEEN US SHALL BE THE STATE AND FEDERAL COURTS LOCATED IN TRAVIS COUNTY, TEXAS, UNLESS A DIFFERENT TEXAS VENUE IS MANDATED BY APPLICABLE LAW. I HEREBY ACKNOWLEDGE THAT, IN THE PERFORMANCE OF MY DUTIES, I WILL MAINTAIN SIGNIFICANT CONTACTS WITH COMPANY PERSONNEL, ACCESS TO COMPANY RECORDS, INFORMATION DATABASES, OR NETWORKS LOCATED IN TRAVIS COUNTY, TEXAS, AND ATTENDANCE AT CERTAIN MEETINGS IN TRAVIS COUNTY, TEXAS, WHETHER BY PHONE OR IN PERSON. I CONSENT TO THE JURISDICTION OF THE FEDERAL AND STATE COURTS LOCATED IN TRAVIS COUNTY, TEXAS. I FURTHER ACKNOWLEDGE AND AGREE THAT MANY OF THE WITNESSES AND RECORDS THAT WOULD BE RELEVANT TO ANY DISPUTE BETWEEN THE COMPANY AND ME ARE LOCATED IN TRAVIS COUNTY, TEXAS, AND THAT TRAVIS COUNTY,

TEXAS, WOULD NOT BE AN INCONVENIENT FORUM OR VENUE FOR THE RESOLUTION OF ANY DISPUTE BETWEEN US. COMPANY AND I HEREBY WAIVE ANY OBJECTION TO TRAVIS COUNTY, TEXAS, AS A FORUM AND VENUE FOR THE HEARING OF ANY DISPUTE BETWEEN US, INCLUDING BUT NOT LIMITED TO ANY OBJECTION BASED ON CONVENIENCE.

Employment Agreement, para. 12(a).

4.  **The Complaint Alleges Claims Arising from the Plaintiff's Employment, Which Are Governed by the Employment Agreement**

Notwithstanding the plain language of Sections 10 and 12 of the Employment Agreement, Mr. Weiss filed suit in this Court on February 18, 2025, against Binstar, Mr. Laughlin, the former Chief Executive Officer of Binstar, and Aubrie Pagano, a presumed current or former Director of Binstar ("Ms. Pagano"). See ECF Dkt. No. 1. Mr. Weiss asserts the following counts against Defendants: Massachusetts Wage Act – Unpaid Wages (Count I, against Binstar, Pagano, Laughlin), Massachusetts Wage Act Retaliation (Count II, against Laughlin and Pagano), Defamation of Character (Count III, against Laughlin and Pagano), Breach of Contract (Count IV, against Binstar), Quantum Meruit/Unjust Enrichment (Count V, against Binstar), Fraud in the Inducement (Count VI, against Laughlin), and Breach of Implied Covenant of Good Faith and Fair Dealing (Count VII, against Binstar). See id.

As discussed herein, Mr. Weiss expressly agreed that (1) arbitration in Travis County, Texas is the exclusive remedy for claims arising from his employment; and (2) the exclusive venue for resolving any dispute with Binstar are the state and federal courts located in Travis County, Texas. Accordingly, Mr. Weiss' Complaint must be dismissed.

## II.    ARGUMENT

**A.  The Complaint Should Be Dismissed Because the Parties Expressly Agreed in Writing to Arbitrate All Claims at Issue in this Lawsuit in Austin, Texas.**

The Complaint should be dismissed pursuant to 9 U.S.C. § 4. The Federal Arbitration Act ("FAA") directs courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The Supreme Court has made clear that where the parties have agreed to arbitrate, the FAA requires "courts [to] 'rigorously enforce' arbitration agreements according to their terms.'" Bosse v. New York Life Ins. Co., 992 F.3d 20, 27 (1st Cir. 2021) (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013); Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221, (1985)). As the First Circuit has noted:

When deciding a motion to dismiss based on an arbitration agreement, a court must determine whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." A motion to compel arbitration should be granted where, as here, all three prongs of the test are satisfied. Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008) (quoting Bangor Hydro–Electric Co. v. New England Tel. & Tel. Co., 62 F.Supp.2d 152, 155 (D. Me. 1999)).

Here, the Employment Agreement was executed on October 2, 2023 by Mr. Weiss and Mr. Laughlin, who was then Chief Executive Officer of Binstar. The Arbitration Agreement contained in the Employment Agreement states that "any dispute, claim or controversy concerning [Mr. Weiss'] employment or the termination of [Mr. Weiss'] employment or any dispute, claim or controversy arising out of or relating to any interpretation, construction,

performance or breach of this Agreement, shall be settled by arbitration to be held in Austin, Texas." Clearly, there is a written agreement to arbitrate.

Further, all of the claims alleged in the Complaint are based on the Plaintiff's employment and are encompassed within the scope of the arbitration agreement. The allegations of Plaintiff's Complaint detail the founding of Binstar, alleged discussions concerning Plaintiff's salary, Plaintiff's alleged demands for payment of owed wages during his employment, Plaintiff's employment termination, and alleged defamatory statements concerning misrepresentations Plaintiff made about his professional background. These allegations fall squarely into the scope of the Arbitration Agreement, given that they relate to Plaintiff's employment and the termination of his employment. Even if one were to contend that certain claims that Plaintiff has asserted are tangentially related to his employment, those claims would still fall within the scope of the Arbitration Agreement. See Bosse, 992 F.3d at 31 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995) ("When an agreement to arbitrate some issues exists, and there is a dispute over the scope of the arbitration agreement, the law requires that those matters be presumed arbitrable 'unless it is clear that the arbitration clause has not included them.'").

Moreover, there is no waiver.  Mr. Laughlin is raising the mandatory arbitration agreement as a defense at the earliest possible opportunity, in a Fed. R. Civ. P. 12 motion, and he has not waived his right to enforcement of the arbitration agreement in any way.

Finally, the Arbitration Agreement is enforceable because it does not limit in any way the remedies available to the Plaintiff.  See Discipio v. Anacorp., Inc., 831 F.Supp.2d 392 (1st Cir. 2011); Paradise v. Eagle Creek Software Services, Inc., 989 F.Supp.2d 132 (1st Cir. 2013). The Defendant denies that the Plaintiff has stated a valid claim under the Massachusetts Wage Act or

that the Wage Act applies to this case. But even if it did, that would not preclude enforcement of the Arbitration Agreement.

The plaintiffs in <u>Discipio</u> and <u>Paradise</u>, like the Plaintiff here, asserted claims under the Massachusetts Wage Act, Ch. 149, § 150. The defendants in those cases moved to dismiss and compel arbitration, and the plaintiffs opposed, contending that their Wage Act claims could not be vindicated in arbitration. <u>Id</u>. The court in each case held that the Wage Act claims could be arbitrated, that the arbitration clause did not limit the remedies available to the plaintiffs, and the agreement to arbitrate must be enforced. <u>See</u> <u>id</u>. Here, as in <u>Discipio</u> and <u>Paradise</u>, the Arbitration Agreement does not limit the Plaintiff's remedies. Accordingly, the Arbitration Agreement should be enforced, and the Complaint should be dismissed.

**B. The Complaint Must Be Dismissed Because the Parties Agreed that the Exclusive Venue for Resolving All Claims at Issue in this Lawsuit are the State and Federal Courts Located in Travis County, Texas.**

The Complaint must be dismissed for the additional reason that the Employment Agreement contains an exclusive forum selection clause. Mr. Weiss expressly agreed that, subject to the Arbitration Agreement, the exclusive venue for resolving any dispute is the state and federal courts located in Travis County, Texas.

When evaluating a motion to dismiss based on a forum selection clause, under the federal common-law standard, a court must consider whether (1) "the forum selection clause is mandatory or permissive," (2) whether the claims at issue fall within "the scope of the clause," and (3) "whether the clause should be enforced." <u>See</u> <u>Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc.</u>, 997 F.3d 367 (1st Cir. 2021) (citing <u>Rivera v. Centro Médico de Turabo, Inc.</u>, 575 F.3d 10, 17 (1st Cir. 2009); <u>Claudio-de León v. Sistema Universitario Ana G. Méndez</u>, 775 F.3d 41, 47 (1st Cir. 2014)). For the third prong, courts "presume that the forum selection clause is

*prima facie* valid and should not be set aside absent a 'strong showing' of 'some reason the presumption of enforceability should not apply.'" <u>See</u> <u>Atlas Glass & Mirror, Inc.</u>, 997 F.3d at 375 (quoting <u>Claudio-de León</u>, 775 F.3d at 48). The Supreme Court has identified four grounds for finding a forum selection clause unenforceable: (1) the clause was a product of "fraud or overreaching"; (2) "enforcement would be unreasonable and unjust"; (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court"; or (4) enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision." <u>Rafael Rodríguez Barril, Inc. v. Conbraco Indus., Inc.</u>, 619 F.3d 90, 93 (1st Cir. 2010) (quoting <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 17 (1972)).

Here, the forum selection clause contained within Plaintiff's employment agreement is mandatory. The clause states "the exclusive venue for resolving any dispute between us *shall* be the state and federal courts located in Travis County, Texas." (emphasis added). The word "shall" has a mandatory connotation. <u>See</u> <u>Claudio-de León</u>, 775 F.3d at 46-47; <u>Rivera</u>, 575 F.3d at 17 n. 5 (including "shall" in list of mandatory terms).

As to the second factor, all of the claims alleged in the Complaint—Unpaid Wages (Count I), Massachusetts Wage Act Retaliation (Count II), Defamation of Character (Count III), Breach of Contract (Count IV), Quantum Meruit/Unjust Enrichment (Count V), Fraud in the Inducement (Count VI), and Breach of Implied Covenant of Good Faith and Fair Dealing (Count VII)—fall within the scope of the forum selection clause. The clause states that "the Company and I agree that the exclusive venue *for resolving any dispute between us* shall be the state and federal courts located in Travis County, Texas." (emphasis added). All of the claims alleged in

the Complaint arise from the Plaintiff's employment and disputes between the Plaintiff and Binstar.

Finally, the forum selection clause is presumptively valid, and none of the four recognized exceptions to the enforcement of such clauses applies in this case. Plaintiff has not alleged that he was fraudulently induced to enter into the Employment Agreement. Rather, his fraud in the inducement claim (Count VI) is based on his assertion that Mr. Laughlin made false promises concerning Plaintiff's compensation that induced Plaintiff to work for Binstar. See Complaint at ¶ 55.

Nor would enforcement of the forum selection clause be unreasonable or unjust. The Plaintiff was a co-founder of Binstar together with Mr. Laughlin, Complaint, ¶ 9, and there is no allegation that he was in any way unsophisticated or lacking in bargaining power. Plaintiff voluntarily entered the Employment Agreement, including the forum selection clause, and acknowledged and agreed that he was "executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else," that he had "carefully read this Agreement" and "asked any questions needed for [him] to understand the terms, consequences and binding effect of this Agreement" and that he "sought the advice of an attorney of [his] choice if [he] wanted to before signing this Agreement."

With respect to the third factor, the Plaintiff cannot contend that proceeding in the state or federal courts located in Travis, Texas is so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. The Plaintiff expressly agreed in the Employment Agreement that in the performance of his duties he will "maintain significant contacts with Travis County, Texas, including, without limitation, telephone and email contacts with company personnel, access to company records, information, databases, or networks located

in Travis County, Texas, and attendance at certain meetings in Travis County, Texas, whether by phone or in person." He further agreed that "many of the witnesses and records that would be relevant to any dispute between the company and me are located in Travis County, Texas, and that <u>Travis County, Texas, would not be an inconvenient forum or venue</u>," and that he "hereby <u>waive[s] any objection to Travis County, Texas, as a forum and venue</u> for the hearing of any dispute between us, including but not limited to any objection based on convenience." Employment Agreement, para. 12 (emphasis added).

Moreover, the Plaintiff himself is a resident of California and will not be any more inconvenienced by proceedings in Texas than he would be by proceedings in Massachusetts. (Indeed, Texas is a shorter distance from California.)

Finally, enforcement of the exclusive forum selection clause would not contravene any strong public policy of Massachusetts federal court, the forum in which this suit was brought. As discussed above with respect to enforcement of the Arbitration Agreement, the Employment Agreement does not limit in any way the remedies that may be appropriately applied in a Texas state or federal court.  See <u>Discipio</u>, 831 F.Supp.2d at 392; <u>Paradise</u>, 989 F.Supp.2d at 132. Accordingly, the forum selection clause should be enforced, and the Complaint should be dismissed.

## III.    CONCLUSION

For the foregoing reasons, the Court should enforce the Arbitration Agreement and the forum selection clause, and the Complaint should be dismissed.

Respectfully submitted,
Defendant,
JACKSON LAUGHLIN,
By his attorneys,

*/s/ Ben N. Dunlap*

_____
Ben N. Dunlap, BBO #661648
Alexandra F. Held, BBO #711052
Freeman Mathis & Gary, LLP
60 State Street, Suite 600
Boston, MA 02109
Ben.Dunlap@fmglaw.com
Alexandra.Held@fmglaw.com

Dated: June 4, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on June 4, 2025 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be served upon non-registered participants.

*/s/ Ben N. Dunlap*

_____

Ben N. Dunlap